Good morning, your honors. The appellant in this case, Terrence Smith, was convicted of an act that is no longer a crime under federal law. And the issue before this panel is whether harmless error is applicable in this case. Mr. Smith was charged with federal witness tampering, and when the court instructed the jury at the conclusion of the case, it made a clearly erroneous instruction as to the federal nexus requirement of federal witness tampering. And specifically, the court instructed the jury that it could convict the appellant based on a mere possibility that the witness would have made a communication to a federal law enforcement officer. Smith was convicted and he was sentenced to 80 years in prison. Now sometime after his conviction became final, the Supreme Court announced its decision in Fowler v. United States. And Fowler was a case dealing explicitly with this federal nexus component of the federal witness tampering statute. And Fowler specifically abrogated the standard that was set forth by the district court in the appellant's case. Fowler made clear that the proper standard that should have applied in the appellant's case was whether there existed a reasonable likelihood that a communication would have been made to a federal law enforcement officer. But it did define likelihood, a reasonable likelihood, a little differently than you might say just likelihood, which might be more likely than not as more than remote, outlandish, or simply hypothetical, more than possibility. I think it's pretty clear they want some level above possibility, less than probability, more likely than not. That's correct. That was the language that was used by the court. And of course the problem was that the appellant's instruction allowed for him to be... It allowed both. And the district court in this case recognized that in adding possibility that was there. I would note that Mr. Smith's counsel argued likelihood to the jury. And I don't know what that does on it. But when you're talking about these levels of probability that are less than, more likely than not, preponderance standard, when it's less than that, then the question is how material was it? Well, Your Honor, I do agree there's some difficulty... I think that's where the whole case is, isn't it, on whether this met the standard of harmfulness, or that's necessary, whether you apply Chapman or Bryant? Correct, Your Honor. And I think to understand that, we do have to look at the facts of the case. And the record is obviously critical here. Very briefly, the appellant was alleged to have been a leader of a gang that operated in the Harwood neighborhood of Baltimore City. And that's the same neighborhood where a woman named Edna McCabeer lived. And Edna McCabeer was the witness in this case. And she had regularly been reporting criminal activity to the local police officers. Baltimore City police only. And it was the government's theory that Smith, in order to silence McCabeer, ordered an attack on her house. And this took the form of other gang members going to the house, taking Molotov cocktails and throwing them at the house. Was there some evidence in the record that this was a task force situation, where there were both state and federal law enforcement? Absolutely not, Your Honor. There is absolutely no evidence that any federal involvement existed whatsoever. Ms. McCabeer had been communicating exclusively with Baltimore City police officials for years. We're talking about the likelihood of whether it gets to the feds. And I think Judge Floyd's question goes to the role of task force. And in Baltimore City, two-thirds of the drug task force are joint task force with the federal government. That is correct. And certainly based on the record in this case, a lot of the federal cases taken up by the DEA came from Baltimore City. However, that's really the exact opposite of what we need to know to answer this likelihood question. What we need to know is the opposite. How many Baltimore City cases make it all the way up to the feds? And there was absolutely no evidence presented at trial to this. For example, are there hundreds of thousands of street-level drug operations like this in Baltimore City? Are there 100? Are there 10? These are the kind of things that we would at least need to have some information about. Yeah, but I thought the evidence was that there are nine task force, drug task force that investigate crimes in Baltimore City, and that of those nine, six were joint task force. And the question is whether that would provide a likelihood that it's going to get to the federal, especially this type of crime, firebombing and drug trafficking. Well, of course, the firebombing would not count toward that likelihood. So what we have to focus on, and the district court did make this clear in its opinion, is the activities that occurred prior to the firebombing. So specifically what you have was street-level drug dealing. And again, there was no evidence as to the likelihood that that would make it all the way up the ladder to federal involvement. Well, as to your element issue, does it make any difference to you whether you're here on a 2255 or a direct appeal as to how we should view this case? Well, I think what that question is getting at is whether the Brecht standard or the Chapman standard should apply to this. Now, under the reasoning of Brecht, obviously Brecht was bending over backwards to preserve the decisions below, and by and large that being the state decisions. And almost all of the cases in the Brecht line of reasoning and that follow Brecht are dealing with situations in which harmless error had been reviewed over and over and over and over again. And finally, it was reaching its way up into the federal courts through 2254. So at that point in the process, there was a clear incentive that, of course, the appellate court had a desire not to undermine all of these lower courts that had already made a ruling on this. Now, in this case, this is somewhat unique in that there has never been a review of the harmless error assessment made by the district court. This is a 2255, so obviously the case originated in federal court. And therefore, there is no reason to defer to the courts below. Again, this is the first review. Well, you have the 10th, the 6th, and the 9th Circuit suggestions. It doesn't make any difference. It's 2255. We'll apply the same thing. The Brecht standard is 2255. So there is some precedent out there. There is some precedent, and there's also a bit of precedent on the other side, weighing in the other direction. I believe it's the 8th Circuit, the 7th Circuit, and also the DC Circuit. Now, admittedly, those courts which implemented the Chapman standard rather than the Brecht standard did not do so explicitly, considering both standards and then deciding that Chapman was more appropriate. However, there is precedent on both sides, and obviously the 4th Circuit has yet to make a decision as to which one applies. But if we are to look at the underlying reasons for applying the less arduous Brecht standard, they simply don't exist in this specific case. To begin with, there is no interest that the court can possibly have in protecting this verdict. This verdict took place under a clearly erroneous jury instruction on a hotly contested issue in the case, and that was the basis of the conviction that led to an 80-year sentence of the appellant. In addition, this error is not the typical kind of trial error for which Brecht is oftentimes an effective safeguard. In most of these cases, we are dealing with a situation where there's overwhelming evidence presented, and that evidence is compared in the light of a small technical mistake that was made, but something like that did not happen in this case. This was a much more significant error. And I will reserve the rest of my time. Thank you, Your Honor. Good morning, Chief Judge Traxler, Judge Niemeyer, Judge Floyd. What sets this case apart, I think, is the fact that it is on collateral review. That is one of the distinguishing factors. A lot of the cases that counsel relied upon in his brief were not cases on collateral review. Brecht sets out the history of collateral review jurisprudence. Counsel just said that this court should have no interest in protecting the verdict. I think that the history of collateral jurisprudence says otherwise. Here, the court instructed the jury, the government must prove there was a possibility or likelihood. In Fowler, of course, the standard is reasonable likelihood. Now, what I want to say is that the government does not contest the error. We admit the error, and the instruction is an error. But if you look at it from the perspective of the jury and a layperson's perspective, in the face of what was uncontradicted evidence, because counsel claims in his brief that it was contested because they raised the issue of the federal nexus in their argument on a Rule 29 motion. However, it was not contested at trial before the jury. And that's what cases like Chapman talk about, contesting it before the jury. But when you look at this from the perspective of the jury, is there really any practical difference when you have uncontested evidence from likelihood, reasonable likelihood? And what we had in terms of the evidence to support reasonable likelihood, as Fowler requires, is we had a long history of violent acts, gang activity, that Ms. McAbeer, and I tried this case, so I remember her testimony vividly, Ms. McAbeer testified to, that was escalating over a period of time. And with that escalation, she also began escalating her contact with the police department. We had the expert testimony of Special Agent Bruce Larry, who testified that six out of nine out of the DEA task forces in Baltimore City. Was this the Bloods gang involved in this? Yes, sir, it was. This was the Bloods sect that was involved in this. And his testimony was that this is exactly the kind of case, as he testified, that they're looking for chronic drug activity, violence, gangs. And this is what Judge Motz was able to discern, that the testimony there supported reasonable likelihood. In fact, Judge Motz went even further in his finding, as he ruled in the 2255 in his memorandum, he said it was virtually inevitable that this case would have been reported to federal authorities. So the evidence wasn't contested. And as you saw from the brief that the government submitted, I think the Brecht standard applies here. The Brecht standard is whether there's substantial and injurious effect. And I think that courts have had a long history of protecting jury verdicts, protecting appeals, protecting other decisions. And now we're at, this case, as you know, was tried in 2005. So we are at a long history of litigation. And now we are protecting what is a harmless error. And this jury heard this evidence, again, uncontradicted. In Ramos-Cruz, even though the defense cross-examined the witness in Ramos-Cruz, they never asked any questions about the federal nexus of that witness. But they did cross-examine that witness as to credibility. In our case, we have even less. It is even less contested because defense chose to not ask any questions of Special Agent Brizolari. They asked no questions of Ms. McAbeer. There were no questions as to her credibility. There were no questions as to the credibility of Special Agent Brizolari. So the evidence as to the federal nexus was uncontested at trial. And I think that this court has an opportunity to distinguish between applying the Brecht standard and applying the Chapman standard. And in this case, what I am urging this court to do is to apply the Brecht standard because it is on collateral review. And there is that long history of protecting the jurisprudence and protecting the cases below. And if you apply either standard, even as I said towards the end of the brief, if you apply either standard, we still come at the same place because the Chapman standard is met, even at that level. As Judge Mott said, it was virtually inevitable that this case would have been reported to a federal official. A far greater standard, virtually inevitable. Counsel made a couple of comments. One that I would say initially he started his argument by saying that the defendant was convicted of an act that is no longer a crime. As far as I know, Your Honor, 1512C is still a crime. And I think that there is a great opportunity for this court to protect the lower court's decisions and to protect the history of this case. And I would ask this court to apply the Brecht standard. You have an opportunity here to make that distinction, whether the Brecht standard should apply because this is on collateral review. All the cases that are cited, this is the only case, besides the ones on the other circuits that the court has already remarked on, this is the only case that occurs on collateral review. All of the other cases are all, even Ramos-Cruz's own direct appeal. So for those reasons, Your Honor, I would ask you to affirm the lower court's decisions. Okay, thank you. Thank you. Mr. Brown, do you have some reply? Referring back to the statements that the district court and Judge Mott said, I'd like to read his quote from what he said at the motion for judgment of acquittal, the Rule 29 motion. He said, quote, The fact that virtually all federal drug prosecutions in the Northern Division come from Baltimore City does not prove the proposition that virtually all or a substantial number of drug offenses in Baltimore City are routinely referred for federal prosecution. It's the reverse of this proposition. And Judge Mott hit the nail right on the head when he said that. What the government proved was exactly the opposite of what they needed to prove to prove the reasonable likelihood. Let me ask you, wasn't this conduct more than just street level? I raised that question about the bloods and the organized gang activity and the violence. Isn't that all subject to consideration? Could that be considered? Well, the testimony at trial was that the witness, Edna McCabier, was calling local police enforcements, and she was reporting street-level activity, street-level drug dealing. No, I'm trying to figure out what. Her subjective knowledge is not important. It's the objective record on this. And the question is, what evidence was there about the type of activity that she was complaining about? I thought there was evidence about the fact that the bloods gang was involved in all this. Is that right? In all honesty, I can't remember specifically whether she mentioned the bloods. Not to me, in the record. Any evidence that the jury heard about the type of activity that was going on. Whether she was aware of who was doing what. Because the inevitability is going to depend on the nature of the activity. Well, although, Your Honor, I would point out that there was a very limited body of evidence as to... I know, but I'm just asking you whether the evidence, not whether she was told it was the bloods, but whether there was evidence in the record that gang activity was occurring there. I believe some might have come in through the Baltimore City police detective who also testified. However, the real problem, again, is what the district court did was they... Essentially, they hypothesized the verdict for the jury. This one sticky little element of the offense, the government could not get around it, and the district court comes in on the 2255 motion and says that the jury would have found a reasonable likelihood when it's extremely unlikely that there was even any evidence to sustain that at the trial level. And Mr. Copperthwaite raised the Ramos-Cruz case, which is very easily distinguishable. And indeed, the district court did distinguish it somewhat in its opinion. But in Ramos-Cruz, you had a federal investigation that was already underway at the time of the murder. So it was very easy in that case for a reviewing court to then say that, well, yes, the jury would have found a reasonable likelihood because the investigation was already underway. Well, you do acknowledge here, I see in your brief, that according to government witnesses, Appellant was a leader of the Bloods, a street gang that operated in that area. Yes, Your Honor, I do not deny that, of course. Well, that was my whole point. We're not talking about a corner transaction where somebody's selling a rock to somebody else. We're talking about organized activity. Correct, Your Honor, but the point is... And they had a meeting, the gang actually had a meeting to address her complaints to the police, didn't they? I believe so, yes, Your Honor. But the point is, everything has to relate back, though, to that witness who was tampered with. Because the question we're asking here is whether it was reasonably likely that that witness would make a communication somewhere down the road to a federal law enforcement officer. And the record clearly showed that in the two years leading up to the incident that set this ball in motion, she had never had a communication with a federal law enforcement officer. So for that reason, Your Honor, and the others that I've articulated, a harmless error should not apply in this case, and the convictions of Mr. Smith, the Appellant, must be reversed. Thank you, Your Honor. Thank you, Mr. Brown. I note that your court appointed. We appreciate very much your undertaken representation of this client. It is my pleasure. Thank you. All right, we'll come down and recounsel, and then we'll take a brief recess so we can reconstitute the panel.
judges: William B. Traxler, Jr., Paul V. Niemeyer, Henry F. Floyd